IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMARA KNIGHT,<br><br>*Plaintiff*,<br><br>v.<br><br>BAXTER HEALTHCARE CORP., a Delaware limited liability company,<br><br>*Defendant*. | Case No.<br><br>**PLAINTIFF DEMANDS TRIAL BY JURY** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Tamara Knight brings this Complaint and Demand for Jury Trial against Defendant Baxter Healthcare Corp. ("Baxter") for the harm it caused to Plaintiff as a result of its emissions of toxic ethylene oxide. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, upon information and belief as to all other matters.

### INTRODUCTION

1. Baxter Healthcare operates an industrial medical sterilization plant in Mountain Home, Arkansas. As part of its sterilization process, Baxter uses and emits ethylene oxide ("EtO").

2. While ethylene oxide has been classified as a human carcinogen since 1994, and its carcinogenic and mutagenic properties have been well documented in studies since at least the mid-1980s, Baxter disregarded ethylene oxide's harmful properties and continues to release it into the surrounding community—entirely unbeknownst to area residents and workers.

3. Self-reported emission estimates from the Baxter facility indicates high levels of ethylene oxide release. Baxter has released as much as 129,000 pounds of ethylene oxide in a single year. While some EtO emissions are from controlled sources, the largest number of these emission estimates are "fugitive emissions" that have been escaping, and continue to escape, the facility.

4. As a result, and unbeknownst to them, individuals living and working near the Baxter facility face some of the highest long-term cancer risks in the United States. These individuals have been unknowingly inhaling ethylene oxide on a routine and continuous basis for decades. Now they are suffering from a variety of cancers, reproductive issues, birth defects, and other life-altering health effects from their continuous exposure to ethylene oxide.

## PARTIES

5. Plaintiff Tamara Knight is a natural person and a citizen of the State of Arkansas.

6. Defendant Baxter Healthcare, Corp. is a corporation organized and existing under the laws of Delaware with its principal place of business located at One Baxter Parkway, Deerfield, Illinois 60015.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because (i) the parties are citizens of different states, (ii) and the amount in controversy exceeds $75,000.

8. This Court has personal jurisdiction over Defendant because it is registered to do business in this District and carries on a continuous and systematic part of its business throughout this District.

9. Venue is proper because Defendant resides in this District.

**FACTUAL ALLEGATIONS**

I.   **Brief Overview of the Ethylene Oxide Industry**

10.   Ethylene oxide, or EtO, is an odorless and colorless flammable gas at room temperature that is produced in large volumes for industrial uses.

11.   Commercial medical equipment sterilizers use the ethylene oxide in their sterilization process for over 20 billion health care products every year in the United States. The EtO sterilization process begins by placing medical equipment in a gas chamber. After air is pumped out of the room, ethylene oxide is introduced and allowed to diffuse into the products for several hours. Once the medical equipment is sterilized, the ethylene oxide is pumped out of the chamber and the remaining EtO is allowed to slowly dissipate.

12.   Since at least 1978, Defendant Baxter has used, and continues to use, EtO in its industrial medical device sterilization process.

13.   Through its industrial processes, Baxter emits EtO into the air allowing it to disburse and be carried by wind throughout the area surrounding its facility.

14.   As such, local residents and workers in the area have unknowingly been exposed to carcinogenic ethylene oxide for decades all while Baxter knew, or should have known, that EtO is dangerous, toxic, carcinogenic, mutagenic, and the cause of various illnesses.

II.   **Health Effects of Ethylene Oxide Exposure**

15.   Ethylene oxide is an odorless, colorless, gas that is dangerous, toxic, carcinogenic, and mutagenic. EtO is highly reactive, readily taken up by the lungs, efficiently absorbed into the blood stream, and easily distributed throughout the human body. Its deleterious properties have been widely known for decades.

16. In a 1977 article, the National Institute of Occupational Safety and Health ("NIOSH") concluded that occupational exposure to ethylene oxide may increase the frequency of genetic mutations in humans. The NIOSH report also raised concerns about the potential carcinogenicity of ethylene oxide.

17. In 1981, the NIOSH released a subsequent report which recommended that EtO be regarded in the workplace as a potential occupational carcinogen. The NIOSH based its recommendation on new evidence of EtO's carcinogenic, mutagenic, and reproductive hazards including studies demonstrating that EtO induced cancer in experimental animals. Specifically, the studies showed an increase in instances of leukemia in line with increases of EtO concentrations, in addition to other adverse effects on reproductive health. An epidemiological investigation of Swedish workers exposed to EtO also revealed increased incidences of leukemia and other cancers.

18. In 1985, the U.S. Department of Health and Human Services published the Fourth Annual Report on Carcinogens and classified EtO as reasonably anticipated to be a human carcinogen.

19. In the early 1990s, the NIOSH published the largest and most informative epidemiological study of ethylene oxide. The study analyzed over 18,000 employees working with EtO at fourteen different industrial facilities sterilizing medical equipment and food spices. The study found sufficient evidence to support a causal link between exposure to ethylene oxide and increased mortality from lymphatic and hematopoietic cancers. Follow-up studies have additionally demonstrated an association between EtO exposure and breast cancer.

20. In 1994, as a result of these findings, the World Health Organization ("WHO") listed EtO as a Group 1 human carcinogen—the agency's highest risk classification—finding

ethylene oxide to be carcinogenic to humans. In 2000, following suit, the U.S. Department of Health and Human Services reclassified EtO to "known to be a human carcinogen." In 2016, the EPA's Integrated Risk Information System similarly reclassified EtO as carcinogenic to humans, and increased—by a multiple of thirty—its estimate of EtO's cancer potency.

21. Exposure to ethylene oxide has been widely studied and its negative health effects well documented. Presently, there is evidence linking ethylene oxide exposure to increased risk of lymphohematopoietic cancers such as non-Hodgkin's lymphoma, myeloma, and lymphocytic leukemia; breast cancer; tumors in the lungs, uterus, and the brain; and reproductive and developmental impairments including increased rate of miscarriages and infertility.

22. Most recently, the Illinois Department of Public Health ("IDPH") conducted an assessment of cancer rates in the population surrounding the Sterigenics facility in Willowbrook, Illinois, which has been using and emitting EtO in its industrial sterilization process since 1984. The findings reaffirm the decades of studies on EtO exposure. The IDPH found elevated cases of:

- Hodgkin's lymphoma;
- Pediatric lymphoma;
- Breast cancer;
- Prostate cancer;
- Pancreatic cancer;
- Ovarian cancer; and
- Bladder cancer.

23. Worst of all, ethylene oxide exposure affects the most vulnerable members of the population. The EPA states that "for a single year of exposure to ethylene oxide, the cancer risk is greater for children than for adults. That is because ethylene oxide can damage DNA."

### III. Baxter Emits Harmful Ethylene Oxide

#### a. The U.S. EPA Estimates High Risks of Cancer in Mountain Home

24. On August 22, 2018, the U.S. Environmental Protection Agency ("U.S. EPA") released the 2014 National Air Toxics Assessment ("NATA")—a screening tool that estimates cancer risks based on emission data in 76,727 census tracts across the United States.

25. The 2014 NATA identified the tract where the Baxter facility is located in Mountain Home (05005950300) as having a potential cancer risk of 84 per one million from exposure to air toxics.

26. The U.S. EPA "considers any exposure, however small, to a carcinogen to create some cancer risk."

27. The U.S. EPA estimates the lifetime risk of developing cancer due to air toxics in in the census tract in which the Baxter facility is located to be almost *three times higher* than the average national cancer risk across the U.S. population.

#### b. The U.S. EPA's Cancer Risks are Understated

28. While the 2014 NATA reveals shockingly high risks of cancer surrounding the Baxter facility, these risks are understated.

29. The U.S. EPA warns that the NATA is *only* a screening tool that local municipalities can use in order to further investigate emission sources and potential public health risks. It notes several NATA shortcomings such as the lack of direct measurements of pollutants and data gaps.

30. The 2014 NATA is a model created on the assumed exposure of a facility's reported 2014 emissions. But the emissions from Baxter have historically been greater than its reported emissions in 2014.

31. The U.S. EPA maintains a Toxics Release Inventory ("TRI") which includes annual self-reported emissions data from industrial facilities using EtO and other toxic chemicals that pose a threat to human health and the environment.

32. A review of TRI data from the U.S. EPA shows EtO emissions from the Baxter facility in Mountain Home over the course of thirty years. *See* Figures 1-4.



(**Figure 1**, showing emissions between 1987 and 1990.)



(**Figure 2**, showing emissions between 1991 and 1999.)



(**Figure 3**, showing emissions between 2000 and 2018.)

| Year | Fugitive Emissions (in lbs) | Stack Emissions (in lbs) |
|---|---|---|
| 1987 | 1,278 | 127,7792 |
| 1988 | 900 | 96,100 |
| 1989 | 1,100 | 100,000 |
| 1990 | 1,300 | 110,000 |
| 1991 | 7,400 | 1,500 |
| 1992 | 9,000 | 2,000 |
| 1993 | 9,000 | 2,000 |
| 1994 | 8,000 | 2,000 |
| 1995 | 21,000 | 2,000 |
| 1996 | 20,000 | 1,000 |
| 1997 | 22,000 | 1,600 |
| 1998 | 22,000 | 300 |
| 1999 | 21,000 | 400 |
| 2000 | 0 | 2,000 |
| 2001 | 0 | 1,700 |
| 2002 | 250 | 1,700 |
| 2003 | 40 | 1,700 |
| 2004 | 250 | 1,700 |
| 2005 | 250 | 467 |
| 2006 | 250 | 386 |
| 2007 | 250 | 400 |
| 2008 | 250 | 450 |
| 2009 | 250 | 470 |
| 2010 | 250 | 510 |
| 2011 | 250 | 550 |
| 2012 | 250 | 580 |
| 2013 | 250 | 700 |
| 2014 | 250 | 700 |
| 2015 | 250 | 4,626 |
| 2016 | 49 | 4,903 |
| 2017 | 50 | 4,963 |
| 2018 | 49 | 4,862 |

**(Figure 4)**

34.     In the early 2000s, Baxter consistently emitted over 2,000 pounds of EtO. And, since 2015, and until the present, Baxter has emitted nearly 5,000 pounds of EtO. These reported emissions, however, are overshadowed by Baxter's emissions in previous years. For example, in

8

1987 Baxter emitted over 129,000 pounds of EtO; over 97,000 pounds in 1988; over 101,000 pounds in 1989; and over 111,000 pounds in 1990.

35. A significant portion of Baxter's emissions include fugitive emissions from leaking valves and other equipment. These reported emissions are only based on estimates due to their elusive nature.

36. Moreover, Baxter has recently suspended its sterilization operation at the Mountain Home facility due to permit violations. According to Lauren Russ, a Baxter spokesperson, a test recently showed that EtO releases from the facility exceeded "the daily emission limit that is indicated in our air permit."

## FACTS SPECIFIC TO PLAINTIFF KNIGHT

37. Plaintiff Tamara Knight moved to Mountain Home, Arkansas in 1977 at the age of six and has since resided less than half a mile from the Baxter facility and as far as four miles during that time.

38. Tamara consistently and without any knowledge that she was doing so, inhaled ethylene oxide in and around her home, and in the areas surrounding the Baxter facility.

39. As a result of this exposure, Tamara was diagnosed with breast cancer in 2008.

40. At the time of her diagnosis, Tamara did not have notice that her medical condition was caused by the Defendant's emissions of ethylene oxide.

## COUNT I
### Negligence
**(On Behalf of Plaintiff and Against Defendant Baxter)**

41. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

42. At all times relevant, Defendant owed a duty to exercise reasonable care in the operation of its facility, including the emission of EtO.

43. Notwithstanding its duty, Defendant breached its duty in one or more of the following ways:

   a. Emitting dangerous volumes of EtO into the air from its facility;

   b. Disregarding safe methods to adequately control EtO emissions from its facility;

   c. Failing to control and report fugitive emissions of EtO;

   d. Failing to warn or advise those who live or work in the community, that they were being exposed to EtO; and

   e. Subjecting those who live and work nearby its facility to an elevated cancer risk.

44. As a proximate result of one of the aforesaid negligent acts or omissions, Plaintiff Tamara Knight suffered injuries of a personal and pecuniary nature.

## COUNT II
### Willful and Wanton Conduct
### (On Behalf of Plaintiff and Against Defendant Baxter)

45. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46. At all times relevant, Defendant owed a duty to refrain from willful and wanton Conduct and/or conduct which exhibited an indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its facility.

47. Notwithstanding its duty, Defendant breached its duty in one or more of the following ways:

   a. Emitting dangerous volumes of EtO into the air from its facility;

   b. Disregarding safe methods to adequately control EtO emissions from its facility;

   c. Failing to control and report fugitive emissions of EtO;

    d.    Failing to warn or advise those who live or work in the community, that they were being exposed to EtO; and

    e.    Subjecting those who live and work nearby its facility to an elevated cancer risk.

48.    As a proximate result of Defendant's willful and wanton acts or omissions, Plaintiff Tamara Knight suffered injuries of a personal and pecuniary nature.

## COUNT III
### Nuisance
**(On Behalf of Plaintiff and Against Defendant Baxter)**

49.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

50.    The right of enjoyment of private property is an absolute right of every citizen.

51.    Defendant knew EtO to be hazardous and harmful to humans.

52.    Defendant knew or should have known that the levels of EtO gas emitted from its facility would have a toxic, poisonous, and deleterious effect upon the health, safety, and well-being of people living and working in the community.

53.    Defendant knew or should have known that the levels of EtO gas emitting from its facility would have a toxic, poisonous, and deleterious effect upon the health, safety, and well-being of persons breathing it.

54.    Defendant's operation, maintenance, and use of its sterilizing facility caused those who live and work in the area surrounding its facility to breathe air containing high levels of EtO on a routine and constant basis, causing a substantially elevated risk of cancer.

55.    Defendant's emissions of carcinogenic EtO interfere with Plaintiff's enjoyment of property and cause hurt, inconvenience, or damage to Plaintiff.

56. As a proximate result of the Defendant's operation, maintenance, and use of its sterilizing facility, Plaintiff's right to breathe clean air without dangerous levels of carcinogens such as EtO was eliminated and/or severely diminished.

57. As a proximate result of Defendant's operation, maintenance, and use of its sterilizing facility, EtO continuously invaded and contaminated the areas surrounding its facility, including Plaintiff's residence.

58. As a proximate result of Defendant's use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO.

59. As a proximate result of Defendant's use and emission of EtO, Plaintiff sustained and will continue to sustain severe and permanent damage to her health due to the emission of EtO.

60. As a proximate result of Plaintiff's inhalation of EtO from Defendant's facility, Plaintiff Tamara Knight suffered injuries of a personal and pecuniary nature.

### COUNT IV
### Ultrahazardous Activity/Strict Liability
### (On Behalf of Plaintiff and Against Defendant Baxter)

61. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

62. Defendant's use and emission of EtO from its medical sterilization facility constitutes an ultrahazardous activity.

63. Defendant's use and emission of EtO created a high degree of risk to those who live and work in and the surrounding area. Further, the likelihood of cancer caused by Defendant's use and emission of EtO is significantly higher the level of acceptable risk.

64. Defendant's use and emission of EtO is especially inappropriate given the densely populated residential and commercial area in which its facility is located.

65. The activities, as conducted by Defendant are exceedingly dangerous and offer little to no value to the surrounding community.

66. Because Defendant's activities are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

67. As a direct and proximate result of Defendant's ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO.

68. As a proximate result of Plaintiff's inhalation of EtO from Defendant's facility, Plaintiff suffered injuries of a personal and pecuniary nature.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Tamara Knight requests that the Court enter judgment in her favor and against Defendant as follows:

   a. An award of damages, including nominal and compensatory damages, as allowed by law and in an amount to be determined;

   b. An award of punitive damages as allowed by law and in an amount to be determined;

   c. An award of attorneys' fees, costs and litigation expenses;

   d. An award of prejudgment interest on all amounts awarded;

   e. An Order for injunctive and declaratory relief; and

   f. Such other and further relief as this Court may deem just and proper.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**TAMARA KNIGHT**,

Date: March 6, 2020

By: /s/Benjamin H. Richman
     One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Iman Boundaoui
iboundaoui@edelson.com
Michael Ovca
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
312.589.6370