## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TAMARA KNIGHT & GARY BECK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BAXTER HEALTHCARE CORP., | ) | 20 C 1652[1] |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge**:

Before the Court is Defendant Baxter Healthcare Corp.'s ("Baxter") motion to transfer venue under 28 U.S.C. § 1404(a). For the following reasons, the Court grants Baxter's motion and transfers the case to the Harrison Division of the U.S. District Court for the Western District of Arkansas.

## BACKGROUND

The following facts are taken from the record and are undisputed unless otherwise noted.

Plaintiffs Tamara Knight and Gary Beck (collectively, "Plaintiffs") are residents of Mountain Home, Arkansas. Defendant Baxter is headquartered in Deerfield, Illinois

---

[1] Consolidated with 1:20-cv-01653.

and manufactures medical products at its facility in Mountain Home.  Plaintiffs allege that Baxter's Mountain Home facility emits ethylene oxide ("EtO") which is classified as a carcinogen.  EtO emissions, according to Plaintiffs, have given individuals living and working near the Baxter Mountain Home facility "some of the highest long-term cancer risks in the United States."  The instant motion concerns whether this case is better litigated in the Western District of Arkansas where Plaintiffs allege that they were exposed to and injured by EtO or in the Northern District of Illinois which contains Baxter's Deerfield headquarters.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  In applying Section 1404(a), the Court "must evaluate both the convenience of the parties and various public-interest considerations."  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013).  "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge."  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).  The Court's analysis is "flexible and individualized," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), and "look[s] beyond a narrow or rigid set of considerations."  *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

## DISCUSSION

The parties do not dispute the propriety of venue here or in the Western District of Arkansas. Therefore, the only issue present before the Court is whether transfer will serve the convenience of the parties and witnesses and the interests of justice. The Court addresses these factors in turn.

### A. Private Interest Factors

In evaluating the relevant private interests, the Court weighs "(1) plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses." *Cent. States, Se. & Sw. Areas Pension Fund v. Mills Investments, LLC*, 2011 WL 4901322, at *2 (N.D. Ill. 2011).

The first factor—plaintiff's choice of forum—slightly favors Plaintiffs because Plaintiffs chose to litigate in the Northern District of Illinois instead of in the Western District of Arkansas. However, as we observed in *Post*, "[w]here a plaintiff does not reside in his chosen forum, the deference owed his choice is substantially reduced." *Post Media Sys. LLC v. Apple Inc.*, 2020 WL 833089, at *2 (N.D. Ill. 2020). Therefore, while Plaintiffs are correct that they are entitled to some deference, their residence in Mountain Home diminishes any deference they are owed. The Court also observed in *Post* that any deference owed to Plaintiffs' choice of forum is "further diminished when the forum of choice is not the situs of material events." *Post Media Sys.*, 2020 WL 833089, at *2. As we discuss in greater detail below, the situs of material events is

3

Mountain Home—not Deerfield. Indeed, Mountain Home is where the Baxter facility allegedly emitted EtO and where Plaintiffs were allegedly exposed and injured.

The Court's conclusion as to the first factor is firmly in line with this Circuit's precedent. As the Seventh Circuit has held, Plaintiff's choice may generally be entitled significant weight, but not where the relevant conduct did not occur in that forum. *Chicago, R. I. & P. R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955). Courts in this District have also routinely held that a plaintiff's choice of forum is entitled to reduced deference where the plaintiffs do not reside in that forum. *See, e.g., Johnson v. United Airlines, Inc.*, 2013 WL 323404, at *5 (N.D. Ill. 2013) (collecting cases); *Sunrise Bidders, Inc. v. GoDaddy Grp., Inc.*, 2011 WL 1357516, at *2 (N.D. Ill. 2011); *More Cupcakes, LLC v. Lovemore LLC*, 2009 WL 3152458, at *6 (N.D. Ill. 2009).

Plaintiffs' reliance on *Post*, *Sunrise Bidders*, and *More Cupcakes* for the notion that a plaintiff's choice of forum may be overcome only when the transfer is to a defendant's hometown is misplaced. The Court's holding in those *intellectual property* cases depended on the notion that IP matters were directed at the corporate headquarters itself. For example, in *Post*, we observed that "[i]n patent cases" "courts focus on the location of the infringer's principal place of business since these cases center on the infringer's activities and documents." *Post Media Sys.*, 2020 WL 833089, at *2. This is not an IP case. Rather, it is a case about allegedly toxic emissions that predominantly took place in Mountain Home—not Deerfield. In line with this authority, the Court concludes that the first factor merits some deference to plaintiff's choice of forum.

However, such deference is reduced and is ultimately overcome by the collective weight of the other private and public interest factors.

The second factor—the situs of material events—strongly weighs in favor of transfer. The only material events alleged in the complaints are Plaintiffs' alleged exposures to EtO, which occurred in Arkansas. Indeed, Mountain Home is where Baxter allegedly emitted EtO, where Plaintiffs allegedly were exposed, and where Plaintiffs allegedly were injured. The Court's conclusion as to this factor is in line with the principle that "the most significant situs generally is the place where the relevant decision's effects were felt." *Pryor v. United Air Lines, Inc.*, 2013 WL 4506879, at *7 (N.D. Ill. 2013); *accord Johnson*, 2013 WL 323404, at *5. The parties do not dispute that the decision to emit EtO was felt in Mountain Home and by Mountain Home residents. Accordingly, this factor weighs in favor of transfer.

Plaintiffs' assertion that some conduct must have occurred in Deerfield is just that: an assertion. Plaintiffs' complaint mentions no policies set at the Deerfield headquarters which constitute actionable conduct. Indeed, the thrust of Plaintiffs' claim is about government-permitted emissions of EtO in Mountain Home, not any specific corporate policy allegedly set in Deerfield. The cases Plaintiffs rely on are distinguishable and do not alter the Court's conclusion because they concern express policies made at corporate headquarters—not local toxic emissions in a local community. *See, e.g., Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 956 (N.D. Ill. 2017) (discussing deference specific to the Fair Labor Standards Act and corporate

*policies* amounting to significant control); *Lafleur v. Dollar Tree Stores, Inc.*, 2012 WL 2280090, at \*1, \*4 (N.D. Ill. June 18, 2012) (discussing a corporation's "uniform policies and procedures" established at its headquarters).  Plaintiffs' argument about the LinkedIn profile of Baxter employee Mike Sadowski is similarly unpersuasive because, at best, it evidences general involvement in a similar issue area—not that Mr. Sadowski directs or controls any of the relevant conduct that took place in Mountain Home. Accordingly, the Court concludes that the situs of material events is Mountain Home— not Deerfield.

The third factor—the location of material sources of proof—also favors transfer. Baxter argues that many key documents may only exist in Mountain home.  Plaintiffs respond that Baxter is merely trying to redistribute burdens between the parties, that documents can be easily transported, and that Baxter has insufficiently identified the relevant documents available only in hard copy.  While Plaintiffs' arguments may minimize the degree to which this factor favors transfer, the Court concludes that documents are comparatively more accessible in Mountain Home than in Deerfield.

There are four reasons for the Court's conclusion as to this factor.  First, the location of Baxter's plant and the equipment at issue are in Mountain Home and not Deerfield.  Second, essential documents related to Baxter's sterilization process and historical EtO emissions, are located and, importantly, archived in Mountain Home. Third, Arkansas Department of Environmental Quality ("ADEQ") documents, which Baxter represents will likely be relevant to its defense, are more likely to be accessible

in Arkansas than in Illinois. Indeed, many of these documents are only in paper archives and, thus, can more easily be obtained in Arkansas. And fourth, because Plaintiffs received medical treatment in Arkansas as far back as 2008, it is conceivable that any archived documents are also more readily accessible in Arkansas. Admittedly, some relevant documents may in fact be retained in Deerfield, but those electronic documents are more easily transferred to Arkansas than the potentially paper documents identified by Baxter. Accordingly, this factor also weighs in favor of transfer to Arkansas.

The fourth factor—the relative convenience for the parties—weighs in favor of transfer. This factor considers "the parties' residences and their ability to bear the expense of litigating in each forum." *McCain Foods Ltd. v. J.R. Simplot Co.*, 2017 WL 3432669, at *4 (N.D. Ill. 2017)). Put concisely: Plaintiffs are Arkansas residents and are alleging that the actions of an Arkansas-based facility harmed them. Given the Plaintiffs' residence in Arkansas, it should be more convenient for them to litigate in Arkansas than in Illinois. Litigation in Mountain Home is likely also preferable for Baxter who maintains the relevant facility in Mountain Home and is actively trying to litigate there instead. The relative convenience for both parties in Mountain Home is also buttressed by the comparatively greater number of documents and witnesses in Mountain Home. Accordingly, this factor also weighs in favor of transfer.

The fifth factor—the convenience for non-party witnesses—likewise favors transfer. The convenience of non-party witnesses is "often viewed as the most important factor in the transfer balance." *Post Media Sys.*, 2020 WL 833089, at *3

(quoting *Brandon Apparel Grp. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999)).  Because most non-party witnesses are likely to be residents of Arkansas— not Deerfield—this factor weighs in favor of transfer.  Specific Arkansas witnesses might include current and former employees of the Mountain Home facility, local ADEQ regulators responsible for regulating Baxter's EtO emissions in Mountain Home, Plaintiffs' families, and Plaintiffs' treating physicians who provided medical care to Plaintiffs.  Given this substantial list of Arkansas-based non-party witnesses, it is highly likely that if this case is in Illinois that those witnesses will have to travel much further than if the case were tried in Arkansas.

Plaintiffs' reservations about this factor do not tip the weight of the balance in their favor.  Initially, this factor can weigh in favor of transfer even where the witnesses are not specifically named.  *See, e.g.*, *Mgmt. Registry, Inc. v. Batinich*, 2018 WL 1586244, at *4 (N.D. Ill. 2018); *Burt v. C.H. Robinson Worldwide, Inc.*, 2007 WL 781736, at *4 (N.D. Ill. 2007).  The Court also observes that Baxter has identified with considerable specificity potential non-party witnesses.  Plaintiffs might be correct that Baxter witnesses may have to travel inevitably, but this fact turns on non-party, not party, witnesses.  *See Post Media Sys.*, 2020 WL 833089, at *3.  Finally, although COVID-19 has ushered in substantial changes to the courts, Baxter is right to point out that the mere possibility of continued remote depositions and hearings is too speculative to tip the balance of this inquiry in Plaintiff's favor.  Accordingly, this factor also favors transfer.

8

In sum, while the Court affords some deference to Plaintiffs' choice of forum, the remaining private interest factors favor transfer to Arkansas and trump Plaintiffs' choice of forum.

## B. Public Interest Factors

"The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation,* 626 F.3d at 978. In evaluating the interests of justice, the Court considers "(1) how quickly the case will proceed to trial; (2) the court's familiarity with the applicable law; and (3) the relationship of the parties to and the desirability of resolving the controversy in a particular community." *Mills Investments*, 2011 WL 4901322, at *2.

The first factor—docket congestion—favors Baxter. The Court agrees with Baxter that docket congestion in the Western District of Arkansas and the Northern District of Illinois are meaningfully different. Specific data supports this conclusion. First, judges in this District have an average of 703 pending civil cases while each Western District of Arkansas Judge has an average of 346 pending civil cases. *United States District Courts—Judicial Caseload Profiles*, U.S. Cts. 47, 55 (Mar. 31, 2020) (comparing annual case statistics for each active federal judgeship). Second, even acknowledging Plaintiffs' argument that Baxter presented statistics in the light most favorable to its position, the median time to trial for the same time period (March 2018 to March 2019) was 37.8 months in the Northern District of Illinois, while the median time to trial in the Western District of Arkansas was 15 months. *Id.* Both statistics lead

to the conclusion that the Northern District of Illinois is more congested notwithstanding more comparable time to disposition data. *Cf. In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 958 (7th Cir. 2007) (reasoning, regarding docket congestion, that "what is important is the speed with which a case can come to trial and be resolved" and affirming dismissal on the basis of forum non conveniens (emphasis added)). Accordingly, this factor slightly weighs in favor of transfer.

The second factor—the familiarity with applicable law—also favors transfer. Both parties agree that the legal issues in this case will be governed by Arkansas law—not Illinois law. While the Court has no doubt that it can properly apply Arkansas law, an Arkansas federal court is at least comparatively better positioned to reflexively understand any significant nuances. This factor therefore weighs slightly in favor of transfer. *See, e.g., Bukhari v. Am. Express Travel Related Servs.*, 2002 WL 385561, at *3 (N.D. Ill. 2002) ("New York law will likely govern the outcome in this contract case and issues of local law are best adjudicated by courts most familiar with them."); *Rich-Mix Prods., Inc. v. Quikrete Cos.*, 1999 WL 409946, at *4 (N.D. Ill. 1999) (similar); *Przybysz v. Denny's, Inc.*, 1993 WL 81366, at *2 (N.D. Ill. 1993) ("it is well-recognized that a diversity case should be decided by the court most familiar with the applicable state law").

The Seventh Circuit's recent decision in *In re Ryze Claims Solutions*, 968 F.3d 701 (7th Cir. 2020) does not change our conclusion. In that case, the Seventh Circuit

10

did not hold that a district court's familiarity with the applicable law is entitled to *no* deference. Rather, it held that a district court overemphasized this feature in a *sua sponte* transfer order. *Id.* at 708-09. In resolving the instant motion, the Court is mindful of the Seventh Circuit's recent caution, but Plaintiffs do not have authority for the idea that this factor is entitled to no weight whatsoever. Accordingly, the Court concludes that this factor weighs, at least to some extent, in favor of transfer.

The third factor—the relationship of the parties to and the desirability of resolving the controversy in a community—also favors transfer because the Western District of Arkansas has a stronger relationship to this case. Generally, "the administration of justice is better served when 'the action is litigated in the forum that is closer to the action.'" *Altamont Pharmacy, Inc. v. Abbott Labs.*, 2002 WL 69495, at *3 (N.D. Ill. 2002) (internal quotations omitted). Here, the relevant "action" is alleged to have occurred in Mountain Home—not Deerfield. Indeed, as we have previously held, where a "plaintiff's only apparent tie with Illinois is the presence of its attorney," the action's "Illinois contacts" are "extremely tenuous" and transfer should be ordered in the interest of justice. *Perfect Latex, Pvt. Ltd. v. Steriltx (U.S.A.), Inc.*, 1995 WL 109308, at *4 (N.D. Ill. 1995).

Plaintiffs arguments do not aid them in the Court's analysis of this factor. Plaintiffs initially argue that Baxter's 10-K mentions the Mountain Home facility and that Illinois therefore has an interest in this action. This argument fails on its own terms because Plaintiffs have not articulated a *warrant* to support their *claim* that a mere

reference in a federal securities filing somehow gives Illinois an interest in this action. *Cf.* Paul T. Wangerin, *A Multidisciplinary Analysis of the Structure of Persuasive Arguments*, 16 Harv. J.L. & Pub. Pol'y 195, 205 (1993) (discussing the principle credited to logician Stephen Toulmin that persuasive arguments must establish grounds, claims, and *warrants*).  Plaintiffs also argue that Baxter's headquarters must play a critical role in determine the policies in place at Mountain Home.  The Court has already addressed—and rejected—this exact contention above.  And Plaintiffs' authorities rely on corporate policies made at corporate headquarters.  *See, e.g., Nicks*, 260 F. Supp. 3d at 956; *Perfect Latex*, 1995 WL 109308, at *1-*4.  No such sweeping corporate policy is at issue here.  Accordingly, the Court concludes that this factor also weighs in favor of transfer.

Taking the private and public interest factors together, the Court concludes that the Western District of Arkansas is a clearly more convenient and just forum for the efficient resolution of this dispute.  This is true notwithstanding Plaintiffs' choice of forum.  Transfer is therefore warranted.

## CONCLUSION

For the foregoing reasons, the Court grants Baxter's motion to transfer venue. The Court further orders that this action be transferred to the Harrison Division of the U.S. District Court for the Western District of Arkansas.  It is so ordered.

Dated: 10/27/2020

Charles P. Kocoras
United States District Judge

12