IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

| | | |
|---|---|---|
| TAMARA KNIGHT and<br>GARY BECK | | PLAINTIFFS |
| V. | CASE NO. 3:21-CV-3003 | |
| BAXTER HEALTHCARE<br>CORPORATION | | DEFENDANT |

## MEMORANDUM OPINON AND ORDER

Before the Court are a Motion to Dismiss and a Memorandum of Law in Support (Docs. 16 & 17) filed by Defendant Baxter Healthcare Corporation ("Baxter"). Plaintiffs Tamara Knight and Gary Beck filed a Response in Opposition (Doc. 24) and Baxter filed a Reply (Doc. 28). Baxter subsequently filed a Notice of Supplemental Authority (Doc. 45). The Motion is ripe for consideration, and for the reasons below, it is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

Plaintiffs are both residents of Mountain Home, Arkansas. On March 6, 2020, Plaintiffs filed nearly identical Complaints in the Northern District of Illinois. The Complaints, which were prepared by the same attorney, both allege that emissions from Baxter's Mountain Home industrial sterilization facility caused Plaintiffs to develop cancer. Specifically, each Complaint alleges four counts against Baxter: negligence, willful and wanton conduct, nuisance, and ultrahazardous activity. *See* Docs. 1 & 46. The parties then filed a joint motion to consolidate both Plaintiffs' cases and to assign them to the same judge, which was granted. On Baxter's motion, the case was later transferred to

1

this Court pursuant to 28 U.S.C. § 1404(a).  Baxter's Motion to Dismiss, first filed before the District Court in Illinois, remains pending.

According to the Complaints, Baxter operates an industrial sterilization facility in Mountain Home that uses the chemical ethylene oxide ("EtO") to sterilize medical equipment.  EtO is an odorless, colorless gas and a known carcinogen.  Ms. Knight has lived in Mountain Home since 1977.  During that time, she has resided as close as less than half a mile and no more than four miles from the Baxter facility.  Mr. Beck has lived less than a mile from the facility since 1988.  Plaintiffs allege that they have been consistently and unknowingly inhaling EtO for decades and that they developed cancer as a result of this exposure.  Ms. Knight was diagnosed with breast cancer in 2008, and Mr. Beck was diagnosed with myeloma in 2019.

In support of their claims for relief, Plaintiffs cite the 2014 National Air Toxics Assessment ("NATA report"), released by the Environmental Protection Agency in August 2018.  The NATA report is a screening tool that estimates cancer risk for tens of thousands of census tracts across the country based on emissions data.  Plaintiffs assert that the NATA report estimates the lifetime cancer risk around the Baxter facility to be three times higher than national average based on the facility's 2014 emissions data. Plaintiffs also provide historical emissions data showing that Baxter's emissions in 2014 were significantly lower than they were between 1987 and 2005 and between 2015 and 2018. Plaintiffs further emphasize that these self-reported data are only an estimate, and a significant portion of Baxter's emissions are "fugitive emissions from leaking valves and other equipment," which are "elusive in nature" and difficult to measure accurately.  (Doc.

1, ¶ 35). Finally, Plaintiffs allege that Baxter has recently had to suspend operations at the Mountain Home facility because of permit violations.

## II.  CHOICE OF LAW

The Court must first determine whether Arkansas or Illinois law controls. Baxter argues that because of the conflicts between Arkansas law and Illinois law on the issues of causation in toxic tort claims and ultrahazardous activity, further analysis under Illinois choice-of-law rules is necessary, and the application of those rules indicates that Arkansas law controls. Plaintiffs argue that Illinois law controls because further choice-of-law analysis is only required when a difference in law will make a difference in the outcome, and Illinois and Arkansas law are substantially similar on the issues in this case.

### A.  Legal Standard

When a case is transferred from another district pursuant to 28 U.S.C. § 1404(a), the Court is required to apply the choice-of-law principles of that district's forum state. *Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990). This case was transferred from the Northern District of Illinois, so the Court applies Illinois choice-of-law rules. In Illinois, "[a] choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007). Additionally, Illinois courts conduct this analysis for each claim individually. *See id.* at 898–99. Once a conflict has been established, Illinois courts look to the Restatement (Second) of Conflict of Laws for further analysis. In a personal injury action, the law of the state where the injury occurred controls unless another state has a more significant relationship with the occurrence and with the parties. *See id.* at 903.

3

Whether another state has a more significant relationship is assessed by considering two tests articulated in the Restatement of Conflicts: the "factual contacts" test found in § 145 and the policy considerations laid out in § 6.  *See id*.  The factual contacts test weighs four factors to determine the state with the most contacts to a particular claim: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered."  *Id.* at 901 (quoting Restatement of Conflicts § 145).  Then § 6 enumerates seven different general principles to consider when weighing conflicting state laws against each other, only three of which are relevant in personal injury cases: "(b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; and (e) the basic policies underlying the particular field of law."  *Id.* at 907 (quoting Restatement of Conflicts § 6(b), (c), & (e)).  These general principles are to be considered in light of the § 145 analysis.  *Id.*

### B. Discussion

In accordance with Illinois choice-of-law rules, the Court will first address whether Baxter has met its burden to establish a conflict between Arkansas and Illinois law with respect to causation in toxic tort cases and ultrahazardous activity claims.

Arkansas applies the test articulated by *Chavers v. General Motors Corp.* to determine causation in toxic tort cases.  79 S.W.3d 361 (Ark. 2002).  Under the *Chavers* test, also known as the "frequency, regularity, and proximity" test, a plaintiff is required to prove: (1) exposure to a toxic substance that was spread by the defendant; (2) with

4

sufficient frequency and regularity, (3) in proximity to where the plaintiff lived, (4) such that it is probable that the exposure to such toxic substance caused the plaintiff's injuries. *Id*. at 369.  While plaintiffs need not prove a "mathematically precise table equating levels of exposure with levels of harm," *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996) (applying Arkansas law), a "threshold showing that [they were] exposed to toxic levels known to cause the type of injuries" they suffered is required.  *Bell v. Mine Safety Appliances*, 2016 WL 797582, at *4 (W.D. Ark. Feb. 26, 2016).  Further, although *Chavers* was decided in the context of asbestos toxic tort cases, the Arkansas Supreme Court has applied this test in non-asbestos toxic tort cases.  *See, e.g.*, *Green v. Alpharma, Inc.,* 284 S.W.3d 29, 36–44 (Ark. 2008).

Illinois, in contrast, does not apply the "frequency, regularity, and proximity" test in environmental exposure cases because such cases do not "afford litigants the opportunity to specify with such certainty the exact level and dose of exposure." *Donaldson v. Cent. Ill. Pub. Serv. Co.*, 767 N.E.2d 314, 332 (Ill. 2002), *abrogated on other grounds by In re Commitment of Simons*, 821 N.E.2d 1184 (Ill. 2004).  In an environmental toxic tort case, the plaintiff must simply put forward "evidence from which a jury could conclude that [the defendant's] conduct was a material element and substantial factor in bringing about the [plaintiff's injuries]."  *Id.*

The Court is therefore persuaded that Arkansas and Illinois laws differ as to evidence of causation in toxic tort cases.  While Arkansas law requires quantifiable evidence of toxic levels of exposure in toxic tort cases generally, Illinois courts specifically decline to extend this standard beyond asbestos cases.  This creates a conflict of law as to Counts I–III of the Complaints—negligence, willful and wanton conduct, and

5

nuisance—each of which requires proof of causation. Further analysis under Illinois choice-of-law principals is therefore required as to these claims.

As for Count IV, Plaintiff's claim for ultrahazardous activity, causation is not a material element of this claim, so the Court considers separately whether Baxter has established a conflict between Arkansas and Illinois law as to Count IV. In Arkansas, an ultrahazardous activity claim requires a showing that an activity "necessarily involves a risk of serious harm to others or chattels of others that cannot be eliminated by the exercise of the utmost care and is not a matter of common usage." *Mangrum v. Pigue*, 198 S.W.3d 496, 499–500 (Ark. 2004). Illinois, on the other hand, adopts the test outlined by the Restatement (Second) of Torts, which requires consideration of the following factors:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.

*In re Chi. Flood Litig.*, 680 N.E.2d 265, 279 (Ill. 1997) (quoting Restatement of Torts § 520, at 36). While one factor alone may not be enough to establish an ultrahazardous activity, it is "not necessary that each factor be present, especially if other factors weigh heavily." *Id.* at 280.

Therefore, the Court also finds that there is a conflict between Illinois and Arkansas law as to Count IV for ultrahazardous activity. While Arkansas requires two elements to prove ultrahazardous activity, Illinois incorporates the same elements in a six-factor test

6

in which none of the factors is dispositive. In other words, a plaintiff could prove ultrahazardous activity in Illinois without establishing the elements required in Arkansas.

Since Baxter has established that there is a conflict of law as to all of Plaintiffs' claims, the Court must determine whether Illinois or Arkansas law applies pursuant to Illinois choice-of-law rules. Plaintiffs concede that if the Court finds a conflict between Illinois and Arkansas law, then Arkansas law likely governs this case. *See* Doc. 24, p. 15 n.2. The Court agrees. First, Arkansas law presumptively applies, as this is a personal injury claim and the purported injury occurred in Arkansas. Second, weighing the factors laid out in the Restatement of Conflicts do not counsel a different outcome. Accordingly, Arkansas law controls for all Counts of the Complaints.

### III. STATUTE OF LIMITATIONS

The Court now turns to Baxter's assertion that Ms. Knight's claims are time-barred. Ms. Knight was diagnosed with cancer in 2008, and the parties disagree as to whether the "discovery rule" permits the statute of limitations to be tolled until Ms. Knight knew or reasonably should have known that Baxter's EtO emissions caused her cancer. As the transferee court, the Court must apply the statute-of-limitations laws of the transferor court in Illinois. *See Ferens*, 494 U.S. at 526. Under Illinois law, if a cause of action that arose in another state would be barred under that state's laws, then it would also be barred under Illinois law. 735 Ill. Comp. Stat. Ann. 5/13-210 (1983). Thus, the Court must first determine if Ms. Knight's claims would be barred under Arkansas law.

In Arkansas, "[i]n order to prevail on a motion to dismiss a complaint on the basis of a statute-of-limitations defense, it must be barred on its face." *Hutcherson v. Rutledge*, 533 S.W.3d 77, 79 (Ark. 2017). "[I]f there is any reasonable doubt as to the application

7

of the statute of limitations, this court will resolve the question in favor of the complaint standing and against the challenge." *Arkansas v. Diamond Lakes Oil Co.*, 66 S.W.3d 613, 616 (Ark. 2002). As a general rule, the statute of limitations "begins to run when the injury occurs, not when it is discovered" unless the defendant has engaged in "affirmative and fraudulent acts of concealment." *Hutcherson*, 533 S.W.3d at 80.

In some contexts, the Arkansas Supreme Court has held fast to the proposition that only affirmative concealment will toll the statute of limitations; in others, however, the court has adopted the "discovery rule," which tolls the statute of limitations "until the negligent act is discovered or should have been discovered." *Chapman v. Alexander*, 817 S.W.2d 425, 425 (Ark. 1991). For example, in *Chapman*, the Arkansas Supreme Court declined to apply the discovery rule to claims for professional malpractice. *See id*. at 427. *See also Most Worshipful Grand Lodge of Free & Accepted Masons v. DCG/UGOC Equity Fund, LLC*, 217 F. Supp. 3d 996, 1005 (E.D. Ark. 2016) (holding that the discovery rule does not apply to a plaintiff's claim for common law fraud absent active concealment by the defendant). In *Martin v. Arthur*, 3 S.W.3d 684 (Ark. 1999), on the other hand, the Arkansas Supreme Court adopted the discovery rule in the context of a product liability claim arising out of injury from an implanted medical device. The state court held that the statute of limitations was tolled from the date of implantation until the patient "knew or, by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered." *Id*. at 690. In *Diamond Lakes*, the state supreme court extended this reasoning to a claim for trespass in the form of groundwater and soil contamination of surrounding land by a gas station. The court applied the discovery rule and held that where the complainant knew of the presence of

the pollution in 1994 but did not discover the source of the pollution for three years, the cause of action did not accrue until 1997.  66 S.W.3d at 625.  *See also Brasel v. Wyerhaeuser Co.*, 2010 WL 11628531 (W.D. Ark. Jul. 30, 2010) (applying the discovery rule to a claim for trespass to land involving air pollution from a nearby lumber mill and holding that the statute of limitations did not begin to run until the plaintiffs' homes were tested for contamination).  Thus, in some contexts, the Arkansas Supreme Court has tolled the statute of limitations when the existence or identity of a wrongdoer was not discoverable until after the injury occurred.

The Court recognizes that Ms. Knight's claims do not include product liability or trespass to land.  However, the state supreme court's holding that "when an injury is suffered, no cause of action in tort begins to accrue *until the plaintiff knows, or by the exercise of reasonable diligence should have discovered, the cause of the injury*," 66 S.W.3d at 624 (emphasis in original), is equally applicable to the facts before this Court.  Though Ms. Knight suffered an injury when she was first diagnosed with cancer, the Court finds that her claim did not accrue until she discovered, or reasonably should have known, that her cancer might be the result of Baxter's allegedly tortious EtO emissions.

Ms. Knight's Complaint indicates that EtO has been a known carcinogen since at least the 1980s and that Baxter has been emitting EtO since 1978.  Nevertheless, a motion to dismiss may only be granted if the complaint is barred by the statute of limitations "on its face."  *Hutcherson*, 533 S.W.3d at 79.  Even though Ms. Knight has pleaded that scientific and government bodies have long recognized EtO's carcinogenic properties, that does not necessarily mean that a reasonable person in Ms. Knight's position would have known in 2008 that EtO was the cause of her cancer.  *Cf. Brasel*,

9

2010 WL 11628531, at *3 (holding that publicly accessible permits and air pollution applications, unsubstantiated rumors of dumping, and visible particulate emissions were insufficient to create a genuine issue of material fact as to whether the plaintiff should reasonably have known earlier that the defendant was committing a trespass to land in the form of air pollution).  Therefore, while a factual question exists as to when Ms. Knight knew or should have known that EtO was the alleged cause of her cancer, her Complaint is not barred on its face by the Arkansas statute of limitations.

Since Ms. Knight's claims are not barred under Arkansas law, the Illinois borrowing statute does not apply.  As a result, the Court must now determine if her Complaint would be barred by the statute of limitations under Illinois law.  The parties do not dispute that Illinois applies the discovery rule, which "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135 (Ill. 1995).  "'[W]rongfully caused' . . . refers to when an injured party becomes possessed of sufficient information concerning [her] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Castello v. Kalis*, 816 N.E.2d 782, 789 (Ill. App. Ct. 2004) (cleaned up).  Additionally, under Illinois law, "[t]he statute of limitations cannot be raised by a motion to dismiss unless it affirmatively appears from the complaint that the action is barred." *Pumala v. Sipos*, 476 N.E.2d 462, 463 (Ill. App. Ct. 1985) (quoting *Cundiff v. Unsicker*, 454 N.E.2d 1089, 1091 (Ill. App. Ct. 1983)).  For the same reasons discussed above, the Court cannot determine at this stage in the litigation when a reasonable person

in Ms. Knight's position would have been put on notice of her potential claim and therefore cannot find that Ms. Knight's claims are time-barred.

## IV. SUBSTANTIVE CLAIMS

Having addressed the procedural elements of Baxter's Motion, the Court now turns its attention to the substance of Plaintiffs' claims. The Court concludes that Plaintiffs have pleaded sufficient facts to state a claim for negligence but that the claims for willful and wanton conduct, nuisance, and ultrahazardous liability must be dismissed.

### A. Legal Standard

To survive a motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Finally, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

### B. Count I—Negligence

In seeking to dismiss Plaintiffs' negligence claim, Baxter argues that it has not breached any duty to Plaintiffs because it operates pursuant to a state permit and Plaintiffs do not allege any breach of the applicable regulations. The Court disagrees, however, that compliance with state regulations necessarily immunizes a defendant from liability for negligence.

"To prove negligence, a party must show that the defendant has failed to use the care that a reasonably careful person would use under circumstances similar to those shown by the evidence in the case." *Wagner v. Gen. Motors Corp.*, 258 S.W.3d 749, 754 (Ark. 2007). Arkansas courts have recognized that "[a]lthough [a defendant]'s compliance with industry or statutory safety standards [i]s proper evidence on the question of negligence, it is not conclusive because it is not necessarily a complete discharge of its duties toward the public." *Little Rock Land Co. v. Raper*, 433 S.W.2d 836, 842 (Ark. 1968) (defendant owner-operator of an elevator that injured the plaintiff's hand when the elevator's safety mechanism failed to prevent the injury could still be found negligent despite the elevator being compliant with all industry safety standards); *see also St. Louis Sw. Ry. Co. v. Farrell,* 416 S.W.2d 334, 337 (Ark. 1967) (after a collision between a train and a car at a railroad crossing, defendant railroad company could be liable for negligence because although the crossing met "the standards set by the American Association of Railroads, as adopted by the Bureau of Public Roads, and the Arkansas Highway Department[,] . . . a railroad's compliance with safety regulations (either industry or statutory regulations) does not constitute a complete discharge of its duties toward the public."); *Ivory v. Woodruff Elec. Coop. Corp.,* 460 S.W.3d 805, 809 (Ark. Ct. App. 2015)

(defendant electric company that operated electrical transformer without a protective device intended to keep animals from making contact with it could still be found negligent when a squirrel's contact with the transformer caused a fire that burned the plaintiff's home, despite the transformer's compliance with the requirements of the National Electric Safety Code, the Public Service Commission, and the Rural Utilities Service, because although the plaintiff "did not present evidence of a [regulatory violation], this ignores the broader duty of reasonable care"); *Kirkendall v. Harbor Ins. Co.*, 698 F. Supp. 768, 779 (W.D. Ark. 1988), aff'd, 887 F.2d 857 (8th Cir. 1989) (despite being compliant with all FDA regulations and industry standards, defendant blood bank could be found negligent when a patient contracted AIDS after receiving a blood transfusion because "compliance with statutory or regulatory standards is not conclusive on the issue of due care. . . . [S]tatutory or regulatory standard[s] [are] no more than a minimum and . . . do[] not necessarily preclude a finding that the actor was negligent in failing to take additional precautions."). Accordingly, Plaintiffs plead a claim for negligence if the Complaints contain facts to suggest that Baxter failed to act as a reasonable careful user of EtO would under the circumstances.

The Court finds that they do. Plaintiffs allege that the lifetime risk of developing cancer around Baxter's Mountain Home facility is three times higher than the average national risk, according to the NATA report. Plaintiffs also allege that this estimate understates the risk because it is based on a model created from self-reported emissions in 2014, when Baxter's reported emissions were significantly lower than they had been in the 1980s and '90s and lower than they have been in the years since 2014. Baxter's EtO emissions may be further understated, Plaintiffs allege, because "fugitive emissions"

constitute a significant proportion of the EtO emissions, and fugitive emissions are difficult to measure. The Court agrees with Baxter that the factual allegations here are not nearly as robust as those presented by the plaintiffs in *Kamuda v. Sterigenics U.S., LLC, et al.*, No. 18-L-10475 (Ill. Cir. Ct. Aug. 17, 2020) (*see* Doc. 24-1). Nevertheless, reading each Complaint as a whole, the Court is satisfied that Plaintiffs' allegations provide facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft*, 556 U.S. at 678, and provide Baxter with sufficient notice of Plaintiffs' claim "and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (2007). From the Complaints, the Court can infer that a reasonably careful user of EtO might have taken more precautions than Baxter.

Baxter also seeks to dismiss any negligence claim premised on a failure to warn. Baxter's argument relies on the premise that it did not have a duty to warn Plaintiffs of the dangers of EtO because, as the Complaints allege, the carcinogenic properties of EtO have been public knowledge for decades, as are Baxter's reported emissions. The Court is not persuaded, however, that simply because information is publicly available a defendant is *per se* relieved of a duty to warn. In rejecting a state-law statute-of-limitations defense to a claim of trespass to land premised on air pollution from a local lumber mill, another court in this district held that "[w]hile permits and air pollution applications may have been public records, no reasonable person could be expected to search these records out and conclude for themselves that their property was being contaminated based solely upon the numbers and readings in the documents. These permits and applications did not explicitly alert the Plaintiffs to any alleged contamination." *Brasel*, 2010 WL 11628531, at *3. The Court finds the same reasoning persuasive here. A

14

sophisticated internet user with enough understanding of the situation to know what information to look for and where to look might have been able to find data regarding Baxter's emissions. But that does not necessarily relieve Baxter of a duty to warn.

Baxter's argument regarding proximate cause relies on the same premise: It cannot be presumed that warnings would have altered Plaintiffs' conduct because the information that would have been contained in the warnings was already publicly available. Since this is the only argument Baxter makes regarding the insufficiency of a claim for failure to warn and the Court rejects this reasoning, any claim Plaintiffs make based on negligent failure to warn will not be dismissed.

### C. Count II—Willful and Wanton Conduct

Next, Baxter asserts that Plaintiffs' second claim must fail because Arkansas does not recognize willful and wanton conduct as a standalone cause of action. It further argues that even if willful and wanton conduct was recognized, Plaintiffs have failed to plead facts sufficient to state a claim because they rely only on the same allegations that support their claim for negligence. The Court agrees that even if willful and wanton conduct is a cause of action under Arkansas law, Plaintiffs' allegations are not adequate to state a claim.

Where Arkansas courts have discussed the concept of willful and wanton conduct, they have assessed whether a defendant's conduct gives rise to "a deliberate intention to harm or an utter indifference to, or conscious disregard of, the safety of others." *Moses v. Bridgeman*, 139 S.W.3d 503, 507 (Ark. 2003). Establishing a conscious disregard for the safety of others requires showing the "defendant 'knew or ought to have known, in the light of the surrounding circumstances, that [its] conduct would naturally or probably result

15

in injury and that [it] continued such conduct in the reckless disregard of the consequences from which malice can be inferred.'" *Shepherd v. Washington Cnty.,* 962 S.W.2d 779, 790 (Ark. 1998).

Plaintiffs have not stated a claim for willful and wanton conduct. The Complaints merely restate the allegations supporting the claims for negligence. There are no facts pleaded indicating Baxter displayed either an intent to harm Plaintiffs or a conscious disregard for Plaintiffs' safety. In their brief, Plaintiffs urge the Court to infer utter indifference or conscious disregard from Baxter's conduct in emitting large quantities of a known carcinogen without warning to surrounding residents, but the Court finds that this is not sufficient to support Plaintiffs' claim. Unlike in *Kamuda*, the case on which Plaintiffs rely, the Complaints do not contain any allegations indicating that Baxter had or should have had knowledge that the quantity of EtO it was releasing would cause harm to nearby residents. *See Kamuda*, Doc. 24-1 at p. 5 (denying motion to dismiss where plaintiffs alleged that defendants "manipulated EtO detection systems [and] ignored warning lights which indicated high EtO levels"). Therefore, Count II must be dismissed.

### D.  Count III—Nuisance

Baxter points to two deficiencies in Plaintiffs' nuisance claim. First, Baxter argues that its EtO emissions cannot constitute a nuisance because Baxter's facility operates pursuant to a state permit. The Court agrees with Plaintiffs, however, that compliance with regulations does not automatically preclude a finding of nuisance. *See Aviation Cadet Museum, Inc. v. Hammer*, 283 S.W.3d 198, 205 (Ark. 2008) (quoting *Meriwether Sand & Gravel Co. v. State,* 26 S.W.2d 57, 62 (Ark. 1930) ("[E]very man must so use his own property as not to injure that of his neighbor; and the fact that he has invested much

money and employs many men in carrying on a lawful and useful business upon his land does not change the rule."); *see also Ginardi*, 2011 WL 3493125, at *2 ("Arkansas has long recognized that just because an activity is lawful it does not mean that the tortfeasor is immune from a nuisance claim.").

Baxter's second argument is that Plaintiffs' allegations do not involve the traditional interferences with use and enjoyment associated with a nuisance claim—loud noises, disagreeable odors, or unattractive sights. Plaintiffs argue in response that Baxter's EtO emissions "interfered with the use of their property by exposing them to elevated levels of carcinogenic chemicals through the air they breathed on their property and that lead to their cancers." (Doc. 24, p. 29). However, the case Plaintiffs cite in support of this proposition—*Ginardi*—involved a nuisance claim supported by allegations of both "harmful levels of noise pollution" and emissions of "methane and hydrogen sulfide, among other flammable and noxious gasses." 2011 WL 3493125, at *1.

None of Plaintiffs' allegations, in contrast, involve an immediately perceptible interference with their enjoyment of their land. Quite the opposite, in fact—Plaintiffs' arguments regarding the statute of limitations and Baxter's failure to warn rely on the proposition that Plaintiffs inhaled EtO for decades without any knowledge of that fact. While physical harm to the plaintiff rather than to his or her land is sufficient to state a claim for nuisance, Plaintiffs have not directed the Court to any case law indicating that a plaintiff states a nuisance claim where he or she was not aware of the interference as it was occurring, nor has the Court found any. *See, e.g., Aviation Cadet Museum*, 283 S.W.3d 198 (airport found to be a nuisance where the planes caused noise pollution and interfered with an adjoining neighbor's ability to fly R/C planes); *S.E. Ark. Landfill, Inc. v.*

17

*Arkansas*, 858 S.W.2d 665 (Ark. 1993) (affirming a finding that the defendant's landfill operation causing a noxious odor was a nuisance); *Higgs v. Anderson*, 685 S.W.2d 521 (Ark. Ct. App. 1985) (allegations that residents had to change their lifestyle as a result of the noise pollution from an outdoor dog kennel supported finding a nuisance); *Ozark Poultry Prods., Inc. v. Garman*, 472 S.W.2d 714 (Ark. 1971) (nuisance found when odors caused by animal rendering plant interfered with plaintiffs' ability to eat and sleep at night); *Ozark Bi-Prod. v. Bohannon,* 271 S.W.2d 354, 356 (1954) (animal rendering plant that polluted the neighborhood with noxious odors found to be a nuisance). The Court therefore concludes that Plaintiffs have failed to allege a claim for nuisance under Arkansas law.

### E.  Count IV—Ultrahazardous Activity

Finally, Baxter argues that Plaintiffs failed to allege either of the two elements necessary to state a claim for ultrahazardous activity. Under Arkansas law, an ultrahazardous activity claim requires a showing that an activity: "[(1)] necessarily involves a risk of serious harm to others, or chattels of others, that cannot be eliminated by the exercise of the utmost care, [(2)] and is not a matter of common usage." *Mangrum v. Pigue*, 198 S.W.3d 496, 499–500 (Ark. 2004). The Court agrees that Plaintiffs have not pleaded any facts to support the second element, as they do not suggest that the use of EtO to sterilize medical equipment is not a matter of common usage. Rather, Plaintiffs seem to rely on Illinois law in structuring their pleadings as to this claim and do not make

18

any allegations related to the common usage element.[1]　Therefore, the Court finds that Plaintiffs have failed to state a claim for ultrahazardous activity.

## V.　CONCLUSION

For these reasons, **IT IS ORDERED** that Baxter's Motion to Dismiss (Doc. 16) is **GRANTED IN PART AND DENIED IN PART**.　Counts II, III, and IV of each Complaint, are **DISMISSED WITHOUT PREJUDICE**.　Count I remains for adjudication.　A case management hearing in this matter is **SET** for **June 14, 2021 at 10:30 am**.

**IT IS SO ORDERED** on this  25th  day of March, 2021

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[1] In fact, Plaintiffs' allegation that "[c]ommercial medical equipment sterilizers use the ethylene oxide in their sterilization process for over 20 billion health care products every year in the United States," (Doc. 1, ¶ 11), and that Baxter has done so since "at least 1978," *id*. at ¶ 12, might even support the opposite inference.